UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING.


MEDTRONIC COREVALVE, LLC,
et al.,
                    Plaintiffs,

                                SACV-11-00961-JVS

EDWARDS LIFESCIENCES, et al.,
                    Defendants.
------------------------------


REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

December 5, 2011


SHARON A. SEFFENS, RPR
United States District Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA
(714) 543-0870

```
1    APPEARANCES OF COUNSEL:

2    For the Plaintiffs:

3    MARTIN R. LUECK
     STACIE E. OBERTS
4    ROBINS, KAPLAN, MILLER & CIRESI, LLP
     2800 LaSalle Plaza
5    800 LaSalle Avenue
     Minneapolis, MN  55402-2015
6    (612) 349-8500

7    DAVID MARTINEZ
     ROBINS, KAPLAN, MILLER & CIRESI, LLP
8    2049 Century Park East, Suite 3400
     Los Angeles, CA  90067-3208
9    (310) 552-0130

10   For the Defendants:

11   JOHN E. NATHAN
     CATHERINE NYARADY
12   PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
     1285 Avenue of the Americas
13   New York, New York  10019-6064
     (212) 373-3000
14

15   WILLIAM S. O'HARE
     SNELL & WILMER, LLP
16   600 Anton Boulevard, Suite 1400
     Costa Mesa, CA  92626-7689
17   (714) 427-7000

18

19

20

21

22

23

24

25
```

```
 1    SANTA ANA, CALIFORNIA; MONDAY, DECEMBER 5, 2011; 1:30 P.M.
 2              THE CLERK:  Item No. 7, SACV-11-00961-JVS,
 3    Medtronic CoreValve LLC, et al. versus Edwards Lifesciences
 4    Corp., et al.
 5              Counsel, please state your appearances.
 6              MR. LUECK:  Good afternoon, Your Honor.  Martin
 7    Lueck on behalf of the Medtronic entities.  With me is
 8    Stacie Oberts and David Martinez.  We also have Mr. John
 9    Burtis, in-house counsel from Medtronic, with us today.
10              MR. O'HARE:  Good afternoon, Your Honor.  Bill
11    O'Hare for the Edwards defendants and counterclaimants with
12    John Nathan and Catherine Nyarady.
13              THE COURT:  Good afternoon.
14              Sir, it's your motion.
15              MR. LUECK:  Thank you, Your Honor.
16              We have read Your Honor's tentative ruling, and we
17    are in complete agreement.
18              THE COURT:  Very good.
19              Mr. Nathan.
20              MR. NATHAN:  Your Honor, you may recall that this
21    hearing was originally scheduled for two weeks ago.  I want
22    to thank publicly Your Honor and also my colleagues on the
23    other side for postponing it so that I could be here.  I am
24    grateful for that.
25              Your Honor, the issue before the Court proposed by
```

4

```
 1    the motion was a motion to dismiss the Cribier counterclaim
 2    or to stay it.  It was measured by what was going on and is
 3    still going on in the Delaware cases, the Edwards I and the
 4    Edwards II cases.  When we received the tentative, it became
 5    very apparent to us through no fault of the Court that an
 6    important set of facts has not presented to Your Honor.  The
 7    reason why I say that is that the briefs -- and I have read
 8    them both before and after the tentative.  The briefs focus
 9    on a comparison of what was going on in Delaware versus
10    Cribier.  There was not a word said about a comparision
11    between the Seguin patent, which started this case in this
12    courthouse, and the Cribier patent.
13          So what has happened is that we now have a
14    tentative ruling where are the Cribier patent will be
15    transferred to Delaware to proceed at its own pace in
16    Delaware, and the Seguin patent will stay here in California
17    to proceed at its own pace in California.  What Your Honor
18    is not aware of -- and I'm going to show you just a couple
19    of sentences to make my point -- is that the Cribier and the
20    Seguin patents arise out of the same facts, the same
21    witnesses, the same activities, all occurring in France by
22    two doctors more than a decade ago.
23          Now, Your Honor probably thinks that because this
24    is Medtronic that -- this is a domestic dispute against
25    Edwards.  Edwards is here in Irvine, and Medtronic
```

1  CoreValve, which is the main player for Medtronic, is also
2  here in Irvine.  Both Edwards and Medtronic are really
3  latecomers to this.  Edwards acquired the company and,
4  frankly, the patent that we are talking about in 2005, and
5  Medtronic acquired CoreValve in 2009.  The Seguin patent and
6  the Cribier patent go back to the 1990s.
7          I am going to talk first about the fact that
8  Cribier was first because he filed first.  I am going to
9  show Your Honor that Seguin copied and tracked Dr. Cribier.
10  We have documents on that.  We have testimony on that from
11  the Delaware case.  These are actually in the record, Your
12  Honor, but it's much easier to show you.  This is the
13  Cribier patent.  I would just like to explain a couple of
14  things.  I'm not going to do anything more than show Your
15  Honor the cover page.
16          It's described as Letac, et al.  Dr. Letac is
17  deceased.  I don't know why way back in 1996 he was listed
18  first, but we call it the Cribier patent because he is the
19  surviving inventor.  Your Honor will see that both of these
20  doctors were in France.  If you go all the way down to the
21  "Foreign Application Priority Data," you will see that the
22  original application was filed in France on December 31,
23  1996.  That was the opening day for this dispute between
24  Cribier and Seguin.  By the way, for the record, this patent
25  is Exhibit M to the Terranova affidavit, which is before

6

1   you.

2          If you look at the Seguin patent -- I am only

3   going to ask you to look at the cover page -- the inventors

4   listed on that are Seguin and an engineer by the name of

5   Bortlien.  Dr. Seguin is listed as living in Great Britain,

6   but he did his work it's undisputed in France along with

7   Mr. Bortlien.

8          If you look down at the priority data -- and there

9   is a long chain of applications that goes all the way back

10  back, and that will be a matter of some dispute between the

11  parties at another time.  The important point is that the

12  earliest date that he claims was November 17, 1999, by

13  foreign in France, three years after Cribier.  That's the

14  earliest date.  So just measuring these two patents one

15  against the other, there is no question that Dr. Cribier was

16  on file before Dr. Seguin.

17          THE COURT:  What's the relevance of that for

18  present purposes?

19          MR. NATHAN:  I'm going to show you a document

20  where Dr. Seguin's lawyers actually copied a claim, which is

21  what resulted in the claim that brings us to your courtroom

22  on the Seguin patent from Dr. Cribier's company.  So these

23  two companies, Seguin's company CoreValve and Cribier's

24  Company PVT, which wasn't even mentioned in the papers in

25  front of you -- and that stands for Percutaneous Valve

| | |
|---|---|
| 1 | Technologies.  Dr. Cribier formed that in the year 2000. |
| 2 | It has been admitted in the Delaware case because |
| 3 | Dr. Seguin testified live, as did Mr. Bortlien, that they |
| 4 | tracked the activities of PVT.  They tracked their licensing |
| 5 | activities.  When Dr. Cribier made his first implantation in |
| 6 | man, which was the first ever aortic valve, they sat up and |
| 7 | took notice, and Dr. Seguin changed his technology to match |
| 8 | Dr. Cribier's.  So what we have here is this conflict |
| 9 | between Dr. Cribier and Dr. Seguin and their respective |
| 10 | companies, part of which is going to be decided in Delaware |
| 11 | and part of which is going to be decided here. |
| 12 | THE COURT:  Well, let me ask you the obvious |
| 13 | question.  Why shouldn't all of these disputes be decided |
| 14 | either in California or Delaware rather than being split up |
| 15 | as they presently are? |
| 16 | MR. NATHAN:  Your Honor, you have cut to the |
| 17 | chase.  That certainly would have been my recommendation to |
| 18 | Your Honor.  We would be thrilled to try the package of |
| 19 | these two in this courtroom before Your Honor.  We would |
| 20 | look forward to that opportunity.  If we can't do that for |
| 21 | whatever reason, then we would like to have Your Honor |
| 22 | consider transferring the package to Delaware. |
| 23 | THE COURT:  By the package, you mean the whole |
| 24 | case? |
| 25 | MR. NATHAN:  I mean Seguin and Cribier. |

1          THE COURT:  The whole case?

2          MR. NATHAN:  The whole case.

3          THE COURT:  That's really not before me by way of

4   any motion.

5          MR. NATHAN:  It is not.  What I was going to

6   suggest -- I'm sort of on bended knee here, but I was going

7   to suggest to allow us to file a supplemental paper.  We can

8   get it on Your Honor's desk by next Monday, the 12th, which

9   would put down in black and white these facts and why these

10  two companies and these doctors and their patents conflict

11  with one another and why they should all be considered

12  together.  As part of that, we will formally ask Your Honor

13  to either keep the package here in Orange County or transfer

14  the package to Delaware where it will be dealt with as part

15  of Edwards I and Edwards II.

16         The only other document I wanted to show Your

17  Honor is the very first document -- I know Your Honor is

18  familiar with all your patent experience file histories.

19  This is the very first document in the Seguin file history,

20  Document No. 1.  It was filed on January 5, 2009.  Why is

21  that significant?  Because it was ten years after Seguin

22  filed originally in France.  Ten years later this paper was

23  filed.  On the very next page, this statement was made.

24  "Pursuant to MPEP, Section 2001.168, applicant" -- meaning

25  Dr. Seguin and Mr. Bortlien -- "is hereby providing notice

1   that claims 1 through 20 of the present application" --

2   that means the Seguin application, which led to the Seguin

3   '281 patent in suit -- "has been copied or substantially

4   copied from U.S. Publication 2008/0004688 published

5   January 3, 2008, to Spenser, et al.," and then it lists the

6   claims.

7          I have compared the claims in the Seguin

8   application to that Spenser application, and they were not

9   substantially copied.  They were literally copied word for

10  word.  Who is Spenser?  This is just the cover page of the

11  application involved.  Here is the Spenser application that

12  was copied, Spenser and some others.  Your Honor will notice

13  that all the inventors here are Israelis.  That's because

14  PVT set up its operation in Israel.  So what was going on

15  here was that Dr. Seguin and some lawyers copied PVT's

16  claims, and that led to the Seguin patent.  You will notice

17  also Edwards Lifesciences, and the reason for that is

18  because Edwards first bought PVT in 2005.

19          So what we have here is this frankly enormous

20  dispute between Medtronic on the one hand and Edwards on the

21  other hand all centering around what happened in France from

22  1996 to 2002, 2003, 2004, and that activity and that story

23  is going to be split between these two courtrooms.

24          Now, I have also checked the claim language, and

25  it turns out there is a common term -- I'm getting way ahead

```
 1   of myself because we haven't done much in terms of claim
 2   construction that is coming up, but there is a term in the
 3   Seguin patent called a bar.  He actually used the term
 4   "longitudinal bar."  That's a key claim element in one of
 5   the claims that I believe will be asserted against us.  We
 6   will know more next week when we get the infringement
 7   contentions, but I'm pretty sure that I am going to see
 8   that.
 9          Well, it turns out that Dr. Cribier's patent --
10   the counterclaim, which is being transferred to Delaware,
11   also has a claim using the term "bar."  It's an intersecting
12   bar, but it's a bar.  So now we have a situation where we
13   might have a ruling in Delaware of what a "bar" means in the
14   Cribier case and a ruling by Your Honor out here on what a
15   "bar" means in the Seguin case.
16          I noticed with interest the Quad/Tech that Your
17   Honor quoted and used extensively in the tentative.  One of
18   the factors in that case for keeping the two cases together
19   and transferring them was the fact that there were common
20   claim terms, and the Court did not want to have inconsistent
21   claim constructions appear in one jurisdiction and also in
22   another.
23          There are other things that I am concerned about
24   by having these two cases split.  The issue of level of
25   skill in the art, which is going to be debated and
```

1    presented, it's the same time period -- it's France in the

2    late '90s and so on -- where in Delaware in Cribier, it

3    might be one thing; whereas, out here it might be another.

4            Also, the prior art is going to be the same.  The

5    very patent that really is the center of this Federal

6    Circuit case, which I know Your Honor has heard about called

7    the Andersen patent, is prior art to both Seguin and

8    Cribier, and that therefore is going to be considered in

9    Delaware, and it's going to be considered out here.

10           Now, our submission, Your Honor, is that -- we

11   accept the first-to-file framework that Your Honor has

12   postulated in your tentative.

13           THE COURT:  But it's not your typical

14   first-to-file in which you have got precisely the same

15   patent in both cases.  It's a little cloudier than that.

16           MR. NATHAN:  I agree.  It is cloudy, and that's

17   why we opposed the motion.  The one thing that struck me as

18   I was reading only the cases and the briefs but also Your

19   Honor's tentative is the word "discretionary."  This

20   basically is charged to the conscience of the Court and your

21   discretionary power to decide what is the right thing to do

22   here.  There is no doubt that in the Alltrade case that

23   formula saying that there is no rigid rule and so on is

24   clear that discretion plays an important role.

25           In that regard, I would like to read from page

SHARON SEFFENS, U.S. DISTRICT COURT REPORTER

1    eight of Medtronic's brief, which quotes a case Electronics

2    for Images, which Your Honor quoted actually in the Broadcom

3    case.  "Cribier should be dismissed unless considerations of

4    judicial and litigant economy and the just and effective

5    disposition of disputes requires otherwise."

6          What Your Honor didn't have -- again, I will

7    accept responsibility for Edwards.  What Your Honor didn't

8    have before you when this issue of should Cribier be

9    dismissed or stayed is the fact that Cribier and Seguin are

10    linked by history, by claim language, by activities, by

11    copying and so on.  It makes no sense whatsoever to have

12    those activities tried in two different courthouses.

13          There is one other point I would like to make, and

14    then I will stop.  That's the question of the

15    practicalities.  Dr. Seguin and Mr. Bortlien are both

16    foreign nationals.  My understanding is that after the jury

17    verdict in Delaware they ceased to be employees of Medtronic

18    CoreValve.  I don't know that Medtronic has any control over

19    them whatsoever, so we are going have to probably go through

20    the Hague Convention.  We have agreed amongst ourselves to

21    try to avoid it.  I think that's laubible.  But I think it's

22    a fairly good possibility that we are going to have to go

23    through the Hague Convention to get Dr. Seguin and

24    Mr. Bortlien.  Why did you file this in 2009 ten years after

25    the fact?  Why didn't you filed it in 1999?  I won't be able

13

```
 1   to ask that question without going through the Hague
 2   Convention.
 3          The same thing goes with Dr. Cribier.  We are
 4   going to do everything we can to make him available, but
 5   technically we don't control him either, plus the PVT
 6   players who may or may not be relevant, the Israelis.  They
 7   really should not be subjected to going through discovery
 8   twice.  It makes no difference whether Delaware goes first
 9   or Orange County goes first.  The point is they're still
10   going to have to do it twice.
11          So what we suggest, Your Honor, is the privilege
12   of putting this all together in a more coherent fashion than
13   I can do on my feet and present it to you on Monday and ask
14   Your Honor to keep these two cases, the Cribier claim which
15   started this case out here and the -- sorry, the Seguin
16   claim and the Cribier counterclaim together.  Our preference
17   would be before Your Honor, but if that's not possible,
18   under this gray first-to-file thing, which we frankly
19   disagree with -- if that's the ruling of the Court, then
20   everything should be transferred to Delaware.
21          THE COURT:  Thank you.
22          Mr. Lueck, let me ask you the same question I
23   asked Mr. Nathan.  Why shouldn't all these cases be in one
24   place?
25          MR. LUECK:  Your Honor, first of all, putting
```

1    aside the newly argued facts, which I'm not going to respond

2    to at this point because they aren't before us -- and I am

3    not complaining about that -- I will simply say that none of

4    those facts really bear on what the dispute is before Your

5    Honor.  Here the issue is with the current patent, the

6    Cribier patent that's been asserted, the '825.  They don't

7    have a claim that they can go forward with at this time.

8    That's because of the status of the other patents that are

9    before Judge Sleet in Delaware.

10            The basic answer to your claim is they don't have

11   a claim that is ripe to proceed.  Medtronic does.  There is

12   no reason why Medtronic's case --

13            THE COURT:  Why isn't their claim ripe?

14            MR. LUECK:  Because they have a judgment right now

15   for roughly $70 million plus that is up on appeal at the

16   Ninth Circuit.  It covers the universe of products that are

17   at issue here among all of the patents in Edwards I and

18   Edwards II, which is before Judge Sleet, and what we are

19   calling Edwards III which is right here.

20            So the posture of that case is the Federal Circuit

21   is going to decide whether that judgment stands.  There is

22   also -- Medtronic won the motion defeating the injunction.

23   Edwards has appealed that issue.  Let's say for the moment

24   that the Federal Circuit decides that the injunction should

25   issue.  This case is basically over because the only product

1    that's at issue would be enjoined.  Then, third, Judge Sleet
2    before the first case went up to the Federal Circuit issued
3    an order that there would be an accounting.  The last point
4    of that is even though the patent that's at issue there, the
5    '552 Patent, has expired or is about to expire, Edwards has
6    made clear its intention to apply for a patent term
7    extension.
8           So until the issues surrounding the '552 Patent
9    and the other patents that are in play before Judge Sleet
10   are resolved, any further activity by the Edwards group on
11   the current Cribier patent would be moot.  There are no
12   further damages that can be awarded.  The entire product is
13   already before the Court in Delaware and the Federal
14   Circuit.
15          The Medtronic patent on the other hand, the Seguin
16   patent, is ripe to proceed.  We have followed the strict
17   venue rules that are in place.  We brought suit here in an
18   appropriate venue.  There has been no challenge to that.
19   The only issue that has been brought up hasn't been one that
20   touches the issues in Delaware.  It's simply their assertion
21   that the Cribier patent and the Cribier work is prior art to
22   the Seguin patent.  That's a defense that they can raise in
23   any court.  It's well within their capability to bring out
24   whatever evidence they want to present on that issue in this
25   court.  To delay our case and have it wait for now a fourth

SHARON SEFFENS, U.S. DISTRICT COURT REPORTER

1   patent covering the same product we think would work an

2   unfair prejudice to Medtronic.  In any event, it's not

3   something that is before the Court for a decision today.

4        THE COURT:  Depending on the result in the Federal

5   Circuit, would it moot as a practical Medtronic's claim in

6   this case?

7        MR. LUECK:  No, it would not.  It would not in any

8   way affect Medtronic's claims in this case on the Medtronic

9   Seguin patent.  It doesn't affect it in any way.  I realize

10  there are a lot of facts here, but if we go back to what

11  outcomes might take place at the Federal Circuit, well, they

12  might affirm the judgment, or they might reverse it.  If

13  they reverse it, we won't know if there will be a new trial.

14  Judge Sleet will have to decide which of those patents and

15  in what sequence he is going to try them.  I would say the

16  Cribier '825 ought to be a part of that.  We don't what the

17  outcome on injunction will be.  There will be an accounting

18  if the Federal Circuit affirms, and there is going to be a

19  patent term extension issue.

20       All of those issues on this family of patents I

21  would submit ought to be resolved together.  None of those

22  issues have anything to do with the Medtronic Seguin patent,

23  only the question of prior art, and there is simply nothing

24  to suggest that the timing of these two cases would in any

25  way be coincident, meaning the Seguin patent with the

17

```
1    Edwards patents.  We don't know when the Federal Circuit is
2    going to rule.  We don't know what Judge Sleet it going to
3    do with the other two cases.  We don't know how the
4    accounting is going to take place.  We don't know what is
5    going to happen with the patent term extension.  Meanwhile,
6    Medtronic has a properly filed claim it would like to
7    proceed on.
8            THE COURT:  Is there any way that the disposition
9    of the Federal Circuit appeal will affect Medtronic's claim?
10           MR. LUECK:  On its current patent, none that I can
11   see.  It's simply not an issue in that case.
12           THE COURT:  But why shouldn't all the package go
13   back to Delaware?
14           MR. LUECK:  Well, I don't see what would be gained
15   by moving -- well, first of all, the main reason is we have
16   proper venue.
17           THE COURT:  That's true, but it could be proper in
18   many places.  Obviously, under 1404(a), venue can be proper
19   in many different places, but you go to the next step in the
20   analysis.
21           MR. LUECK:  If we go to the next step in the
22   analysis, really there is -- if we look at even just the
23   first prong of transfer, looking at the temporal elements
24   that are in play, there is no temporal relationship between
25   the Medtronic patent and the Edwards patents.  There are any
```

1   number of timing events that could happen with the Edwards

2   patents that will determine whether and when.  There is no

3   guarantee that the '825 Patent will ever mature into a

4   lawsuit.

5            I suppose to look at it as pragmatically as I can,

6   Judge Sleet perhaps has some familiarity with these issues

7   because he has heard a trial on similar technology.  On the

8   other hand here, we have brought suit in the jurisdiction

9   where they reside, and we would have all of the convenience

10  arguments were that motion to be put before Your Honor that

11  would suggest that it ought to remain here.  There isn't any

12  real economy that I can see from putting all the suits

13  together since the Seguin case in any event should be

14  separate from the Edwards cases.

15            THE COURT:  It would seem to me that both forums

16  are equally inconvenient with respect to the key players if

17  they are in Great Britain, France, and Israel.

18            MR. LUECK:  Well, some are but not all.  To be

19  honest with you, I'm not going to represent to the Court

20  that I have gone through that analysis in detail.  This was

21  not the argument that was presented in their papers.  If I

22  were to represent to you exactly how it lined up, in all

23  honesty, I think I would have to go back and review it.

24            THE COURT:  Thank you.

25            Mr. Nathan.

SHARON SEFFENS, U.S. DISTRICT COURT REPORTER

1          MR. NATHAN:  Thank you, Your Honor.

2          Counsel actually makes the point for me.  If the

3    unthinkable from Edwards' standpoint happens and the Federal

4    Circuit rules against Edwards and throws out the patent,

5    therefore, there is no damage award and there is no

6    injunction and so on, there is no doubt that the Cribier

7    claim is alive and well.

8          Now, the difficulty is one of timing.  The Federal

9    Circuit argument is on January 11 of next year.  I think

10   counsel would agree with me that it's unknowable when they

11   are going to rule.

12         THE COURT:  Well, those folks are pretty quick in

13   my experience.

14         MR. NATHAN:  I have results in a week, and I have

15   had results in a year and a half, so on Edwards, I have no

16   idea.  My concern is this.  Until that happens, we're not

17   going to know -- even if you accept this theory that Cribier

18   is subsumed by Delaware, we are not going to know until the

19   Seguin case is so far down the track that we are going to be

20   duplicating if it turns out that the Federal Circuit under

21   their theory moots the Cribier claim.

22         Now, if it turns out that the question of which

23   Court is to determine this question of convenience, under

24   the first-to-file rule led by the Alltrade case, the Court

25   that makes that decision is the first-filed Court.

20

| | |
|---|---|
| 1 | Therefore, under their theory, it's not this Court that |
| 2 | decides what is convenient and where it should be decided, |
| 3 | but it's Delaware. |
| 4 | THE COURT:  Well, if I had a 1404(a) motion in |
| 5 | front of me, I would be required to make that call, but I |
| 6 | don't. |
| 7 | MR. NATHAN:  What I would be doing is asking you |
| 8 | to consolidate the two because they are consolidated and |
| 9 | transfer them as a package.  Then the issue of whether or |
| 10 | not it should be kept in Delaware and whether it should be |
| 11 | transferred back if they think California is appropriate is |
| 12 | to be made by the first-filed Court.  That's the reason why |
| 13 | it's kind of odd to be talking about Delaware as the |
| 14 | first-filed.  The first-filed case is really Seguin here and |
| 15 | then the question of Cribier here.  And the question is |
| 16 | should they be divorced and split up?  That's really what is |
| 17 | going on here. |
| 18 | Because we have this earlier case, which may or |
| 19 | may not under their theory change the playing field for |
| 20 | Cribier, does not mean it should be delayed until Seguin is |
| 21 | so far down down the track that then we are going to have to |
| 22 | do Cribier's deposition again, Seguin's again, Bortlien's |
| 23 | again, PVT's again, and go to Europe and so on and so forth |
| 24 | all over again.  Nobody wants that. |
| 25 | Now, I agree and I concede that nothing that the |

```
1   Federal Circuit at least that I can think of in response to
2   Your Honor's question is going to impact the Seguin claim.
3           THE COURT:  So why shouldn't Medtronic be allowed
4   to proceed with that claim?
5           MR. O'HARE:  Because if they proceed, they are
6   proceeding in a vacuum on that claim only, and they are not
7   dealing with the other side of the coin, the other side of
8   the story, which is Cribier.  The two can't be divorced.
9   You have the same facts, witnesses, documents, technology.
10  You have Seguin deriving from Cribier and so on.  Cribier is
11  going to be I think -- assuming he will come here because
12  I'm not sure I have control over him, he will be here
13  defending his technology in the Seguin case.  He shouldn't
14  have to come here again or to Delaware again to defend his
15  technology in the Cribier case.  That's the reason why we
16  appeal to the discretion of the Court to keep these together
17  as a package.
18          I want to end by reiterating we are happy to be
19  here.  This a rare opportunity.  It's my first time before
20  Your Honor.  I would love to try the case before Your Honor.
21  If it turns out all we can do is to transfer the package
22  because it belongs together to Delaware, we're happy to do
23  that.
24          THE COURT:  Why don't I give you seven days to put
25  in any additional showing you would like and then Mr. Lueck
```

22

```
 1    seven days.  The matter will stand submitted at that point.
 2    If I think I want further argument, I'll arrange for it.
 3              MR. NATHAN:  Thank you, Your Honor.
 4              MR. LUECK:  Seven days after we receive --
 5              THE COURT:  Right.
 6              MR. LUECK:  Very well.  Thank you.
 7              THE COURT:  If you want to put it over because of
 8    the upcoming holidays, just put in a stipulation, and I
 9    would be happy to do that.
10              MR. LUECK:  Thank you.  I appreciate that.
11              THE COURT:  Thank you very much, gentlemen.
12              MR. O'HARE:  Your Honor, there is a scheduling
13    conference set for today.  Does Your Honor want to
14    reschedule that for another day after this is sorted out?
15              THE COURT:  I think so.  I think we need to know
16    what is going to stay here and not stay here before we set
17    dates.
18              MR. LUECK:  I certainly agree with that.  I would
19    point out that the schedule has been agreed to by both
20    sides, so that won't be an issue.  We certainly are hopeful
21    it will remain here, our piece of it.
22              THE COURT:  Okay.  Thank you very much.
23              (Whereupon, the proceedings were concluded.)
24                        *    *    *
25
```

SHARON SEFFENS, U.S. DISTRICT COURT REPORTER

23

**CERTIFICATE**

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  December 6, 2011

Sharon A. Seffens 12/6/11
_____
**SHARON A. SEFFENS, U.S. COURT REPORTER**

SHARON SEFFENS, U.S. DISTRICT COURT REPORTER